# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

LESTER ROBERTS,                               :

                Plaintiff,

      -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.          :

Case No. 3:08-cv-352

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD alleging disability from April 7, 2003, due to a heart impairment. (Tr. 68-70; 82-88). Plaintiff's application was denied initially and on reconsideration. (Tr. 50-53; 56-58). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 316-39), who determined Plaintiff is not disabled. (Tr. 19-34). The Appeals Council denied Plaintiff's request for review, (Tr. 14-16), but later set aside its denial and sent Plaintiff's counsel materials he had previously requested. (Tr. 12). Subsequently, the Appeals Council again denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that has severe coronary artery disease with a history of myocardial infarction and angioplasty with stenting,

depression, and possible posttraumatic stress disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 25, ¶ 3, Tr. 28, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity for a limited range of medium work. (Tr. 28, ¶ 5). Judge Padilla then used sections 203.14 through 203.17 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 33, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 34).

Plaintiff was hospitalized April 7 through April 10, 2003, after complaining of retrosternal burning and shortness of breath for the past two months. (Tr. 114-37). Plaintiff underwent a cardiac catheterization and the placement of two stents in his right coronary artery which Dr. Young performed. *Id.* Plaintiff was discharged with the diagnosis of non-ST elevation myocardial infarction, coronary atherosclerosis, and hyperlipidemia. *Id.*

The record contains a copy of treating physician Dr. Snider's office notes dated October, 1988, through April, 2005. (Tr. 147-52, 283-84). Those records reveal that Dr. Snider treated Plaintiff for colds, PTSD, depression, and fatigue. *Id.*

The record contains a copy of treating cardiologist Dr. Young's office notes dated April 19, 2003, through November, 2005. (Tr. 153-72; 249-50; 272-80). Those records reveal that Dr. Young treated Plaintiff for coronary artery disease, non ST-segment elevated myocardial infarction, hyperlipidemia, fatigue, elevated blood sugar, and shortness of breath. *Id.*

Plaintiff was hospitalized May 7-11, 2004, for treatment of unstable angina pectoris. (Tr. 182-201).

Examining psychologist Dr. Jones reported on May 11, 2004, that Plaintiff graduated from high school, stated he could not read or write, was retired from Delphi Industries, saw a psychiatrist in 2000, for depression, and that he stated he could not work because he had no energy. (Tr. 202-06). Dr. Jones also reported that Plaintiff's facial expressions were dull and unanimated, his general body movements were slow, he was cooperative, his speech and thought processes were normal, his presenting demeanor was defeated, resigned, apathetic, and dysphoric, and his affect was blunted. *Id.* Dr. Jones noted that Plaintiff evidenced no overt signs of nervous tension, presented as preoccupied with his own symptomatology, evidenced a degree of confusion, was alert and oriented, and that he presented with marginal information, judgment, and common sense reasoning ability to live independently, make important decisions, and manage his own funds. *Id.* Dr. Jones also noted that Plaintiff had some insight into his problems, his quality of life was inactive and routine, was aware of and capable of sustaining his daily activity level, and that his overall level of functioning was semi-dependent. *Id.* Dr. Jones identified Plaintiff's diagnoses as psychological factors affecting physical condition and dysthymic disorder and he assigned Plaintiff a GAF of 52. *Id.* Dr. Jones opined that Plaintiff's ability to relate to others was moderately impaired, that it was unlikely he would be able to relate sufficiently to coworkers and supervisors on a sustained basis in order to perform simple, repetitive tasks, his ability to understand, remember, and follow instructions was moderately impaired, his ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks was mildly impaired, and his ability to withstand the stress and pressures associated with day to day work activity was moderately impaired. *Id.*

The record contains Plaintiff's mental health treatment records from his counselor Mr. Teneglia dated April, 2004, to March, 2005. (Tr. 224-43). Mr. Teneglia reported on March 24,

2005, that he first saw Plaintiff for intake on August 30, 2004, and for "re-intake" on March 5, 2005, that he last saw Plaintiff on March 18, 2005, that his diagnoses were depression and anxiety disorder with features of posttraumatic stress disorder, that he was not able to perform most work-related mental activities, had slight restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and that he had moderate deficiencies of concentration. (Tr. 224-43). Mr. Teneglia also reported that Plaintiff had good to fair to no abilities to make occupational adjustments, fair to no abilities to make performance adjustments, and good abilities to make personal-social adjustments. *id.*

Dr. Young reported on April 23, 2005, that Plaintiff had a history of myocardial infarction and coronary artery stenting, was able to lift/carry up to ten pounds occasionally and two and one-half pounds frequently, stand/walk for four hours in an eight-hour workday and for one hour without interruption, and that his ability to sit was not affected by his impairments. (Tr. 244-48). Dr. Young also reported that Plaintiff became dizzy with abrupt standing, and that he was able to perform sedentary work, but not light or medium work. *Id.*

Dr. Snider reported on May 12, 2005, that Plaintiff had a history of coronary artery disease and posttraumatic stress disorder which was diagnosed after a significant work accident in 2000 in which he witnessed a friend of his fall into a pool of acid and die, that he had continued intermittently with counseling and therapy, that he had increasing problems with depression, sadness, emotional instability, and lingering pervasive thoughts about the accident, and that he was last evaluated in April, 2005, at which time he had some minimal improvement with medication. (Tr. 251). Dr. Snider also reported that from the standpoint of Plaintiff's ability to work, he would not have any significant physical limitations due to his coronary artery disease, that his limitations

would be related more to his psychological issues, his depression and PTSD were not really controlled despite some counseling and medication, he would have some significant issues with concentration, reliability, and ability to perform at work even under the lowest of stress environments at least for the time being, and that his degree of limitation is somewhat difficult to judge. *Id.*

    Examining psychologist Dr. Halmi reported on March 29, 2006, that Plaintiff stated he was unable to work due to fatigue, excessive pain, and depression which he developed following an approximately 2002 heart attack and stent surgery. (Tr. 252-60). Dr. Halmi also reported that Plaintiff graduated from high school, retired from Delphi in August, 2000, after witnessing another employee fall into acid after which he developed PTSD, was being treated for depression in 2002, and again in 2004, at which time he stopped because he didn't think it was helpful, and that he had been prescribed medication but did not take it. *Id.* Dr. Halmi noted that Plaintiff's flow of conversation and thought were normal, he appeared depressed, showed some signs of anxiety, reported experiencing panic-like symptoms, was somatically focused, and was oriented. *Id.* Dr. Halmi also noted that Plaintiff had the cognitive capacity to live independently, and showed some insight. *Id.* Dr. Halmi identified Plaintiff's diagnoses as depressive disorder NOS and post traumatic stress disorder and assigned him a GAF of 52. *Id.* Dr. Halmi opined that Plaintiff's ability to interact with others was mildly impaired, his ability to understand, remember, and follow instructions was mildly impaired, that he had the ability to follow one and two-step job instructions, his ability to attend, concentrate, and persevere on work tasks was moderately impaired, and that his mental ability to manage the daily stressors associated with routine work was moderately impaired. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Dr. Young's opinion and by failing to consider the role his depression has on his experience of fatigue. (Doc. 9).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461

U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting treating cardiologist Dr. Young's opinion that Plaintiff was not able to perform light or medium work, Judge Padilla determined that the opinion was not supported by Dr. Young's clinical notes and was inconsistent with other evidence of record. (Tr. 28-29).

First, a review of Dr. Young's office notes reveals that they primarily reflect Plaintiff's subjective complaints and contain few, if any, objective clinical findings. In addition, although he opined in April, 2005, that Plaintiff was not capable of performing light or medium work, Dr. Young provided no clinical findings to support his opinion. Further, Dr. Young's office notes indicate that on August 4, 2004, Plaintiff was advised that he may return to work and that he was not to lift over 50 pounds, a limitation consistent with at least a range of medium work. *See,* Tr. 250. Dr. Young's notes do not reflect any change in Plaintiff's status or any new clinical findings between August, 2004, and April, 2005, which would justify the conclusion that he was able to perform only sedentary work and not at least medium work.

In addition, Dr. Young's opinion is inconsistent with the other evidence of record. Specifically, treating physician Dr. Snider opined in May, 2005, that Plaintiff did not have any significant physical limitations due to his coronary artery disease. Moreover, Dr. Young's opinion is inconsistent with the reviewing physician's opinion. (Tr. 174-81). Dr. Young's opinion is also

inconsistent with Plaintiff's activities. For example, Plaintiff "fool[s] around" on his son's farm, attends church, drives three to four times a week, goes to Kings Island [amusement park], took a trip to Las Vegas, and went on a cruise. *See, e.g.,* Tr. 204, 254, 283, 319-20, 324. Finally, the record reveals that Plaintiff's treatment for his alleged cardiac impairment, the impairment for which Dr. Young treats him, has been conservative and Plaintiff sees Dr. Young only about twice a year. *See,* Tr. 321.

Under these facts, the Commissioner did not err by rejecting Dr. Young's opinion as to Plaintiff's residual functional capacity.

Plaintiff essentially argues in support of his second Error that the Commissioner improperly evaluated the impact of his alleged mental impairments, specifically depression and posttraumatic stress disorder, on his perception of his alleged cardiac impairment.

In declining to give Mr. Teneglia's opinion controlling or even deferential weight, Judge Padilla noted that Mr. Teneglia is a social worker and not a psychologist or a licensed psychological counselor/therapist and that his opinion was inconsistent with other evidence of record.

First, the Court notes that a counselor is not a "treating source" and, therefore, a counselor's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1502, 404.1527(a)(2). Nevertheless, although Mr. Teneglia opined that Plaintiff is not capable of performing most work-related mental activities, he provided few, if any, clinical findings or observations to support that opinion. In addition, the record shows that Plaintiff saw Mr. Teneglia on, at most six occasions between August, 2004, and March, 2005, and that two of those occasions were for the purpose of "intake" and "re-intake" suggesting that Plaintiff had counseling sessions

on only four occasions.

Further, Mr. Teneglia's opinion is inconsistent with the other evidence of record. For example, examining psychologist Dr. Jones assigned Plaintiff a GAF of 52 indicating, at worst, moderate difficulties. In addition, Dr. Jones noted that Plaintiff was cooperative, alert and oriented, was capable of living independently and making important decision, that his speech and thought processes were normal, and he opined that Plaintiff was able to perform simple, repetitive tasks. Further, examining psychologist Dr. Halmi opined that Plaintiff's flow of conversation and thought processes were normal, he was oriented, and that he was, at worst, only moderately impaired in his abilities to function. Mr. Taneglia's opinion is also inconsistent with the reviewing mental health expert's opinion. *See,* Tr. 208-23. Finally, Mr. Teneglia's opinion is inconsistent with Plaintiff's treatment history which has been, at best, sporadic, his refusal at times to take prescribed medication, and with his reported activities identified above.

While it is true that Dr. Snider reported in May, 2005, that any limitations Plaintiff had were related to his psychological issues, as noted above, Dr. Snider's own office notes indicate that Plaintiff was advised in August, 2004, that he could return to work with a 50-pound weight restriction his only limitation.

Under these facts, the Commissioner did not err by failing to give Mr. Teneglia's opinion controlling or even deferential weight or by failing to properly evaluate Plaintiff's alleged mental impairment or its affect on Plaintiff's perceived fatigue.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact

to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

July 27, 2009.

s/ Michael R. Merz
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).